IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Case No.: 7:24-cv-00464-BO-RN

| | |
|---|---|
| TERESA DESOTO, Individually and for Others Similarly Situated, ) ) ) Plaintiffs, ) ) v. ) ) WOODBURY WELLNESS CENTER, INC., ) ) ) Defendant. ) ) | **MEMORANDUM IN SUPPORT OF JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT** |

NOW COMES Plaintiff Teresa DeSoto ("Named Plaintiff"), on her own behalf and on behalf of all individuals who have filed consents to join the case (collectively the "Plaintiffs"), by and through their counsel, and Defendant Woodbury Wellness Center, Inc. ("Defendant"), by and through its counsel, and file this Memorandum in Support of Joint Motion to Approve Settlement Agreements.

## I. INTRODUCTION

The Plaintiffs and Defendant jointly and respectfully seek this Court's final approval of their negotiated settlement reached in relation to Plaintiffs' Fair Labor Standards Act ("FLSA") and North Carolina Wage and Hour Act ("NCWHA") claims. The parties attached the executed Settlement Agreement and Release ("Settlement Agreement") as Exhibit A to the Joint Motion to Approve Settlement filed contemporaneously with this memorandum. The Settlement Agreement between the parties is the product of arms-

1

length negotiations by experienced counsel. It will provide substantial relief to Plaintiffs and will eliminate the risks both Plaintiffs and Defendant would bear if the matter proceeded to further litigation and adjudication on the merits. The Settlement Agreement is fair and reasonable, and it should be approved.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Complaint

Defendant is a combination facility with nursing facility beds and adult care home beds in Hampstead, North Carolina. (Dkt. #13, Answer ¶ 35). Defendant employed Plaintiffs as hourly-paid, non-exempt patient care workers at all relevant times. (Dkt. #1, Complaint ¶¶ 19-22, 36). Woodbury automatically deducted 30 minutes for *bona fide* meal periods taken by certain employees. (Dkt. #13 ¶ 5).

On June 7, 2024, Plaintiffs filed a complaint in this putative collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and putative class action under Federal Rule of Civil Procedure 23 and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95.25.1 to § 95-25.25. (Dkt. #1). Plaintiffs contend they are owed wages in that Defendant allegedly violated the FLSA and NCWHA by:

- Failing to pay Named Plaintiff and Plaintiffs overtime for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods between June 7, 2021 through June 7, 2024; and

- Failing to pay for missed, non-taken, or uninterrupted non-*bona fide* meal breaks resulting in Defendant's failure to pay its employees "all wages accruing" to its employees on "the regular payday" between June 7, 2021, through June 7, 2024.

2

(Dkt. #1 ¶¶ 72-87).

On January 23, 2025, Plaintiffs filed their Unopposed Motion for Conditional Certification, For Approval and Distribution of Notice and For Disclosure of Contact Information (Dkt. #20), and Joint Stipulation Regarding FLSA Conditional Collective Certification (Dkt. #19). On March 31, 2025, the Court entered an Order granting Plaintiffs' Unopposed Motion for Conditional Certification, For Approval and Distribution of Notice and For Disclosure of Contact Information, which made June 20, 2025, the deadline for collective members to submit Consents to Join this lawsuit as opt-in plaintiffs. (Dkt. ## 21, 22).

Defendant timely provided Plaintiffs' counsel with contact information for putative collective action members, and Court-approved Notice was sent to potential class members. Sixty-nine individuals thereafter filed Consents to Join this lawsuit.[1] (Dkt. ## 23-1, 24-1, 26-1, 27-1, 28-1, 30-1, and 32-1).

In an effort to preserve time, expenses, and judicial resources, the Parties submitted their Joint Motion Requesting to Participate in non-binding mediation and a Stay of Litigation to Permit the Parties to Participate in a non-binding mediation prior to engaging in formal discovery and protracted litigation, which the Court granted on June 26, 2025. (Dkt. #31). On August 15, 2025, the Parties engaged in a non-binding mediation.

Prior to the non-binding mediation, Defendant produced time records and pay records for all Plaintiffs, from June 7, 2021, through June 7, 2024.

---

[1] Defendant's counsel agreed to the late filing of Melissa Clark's Consent to Join Lawsuit. (*See* Dkt. #32-1).

3

Case 7:24-cv-00464-BO-RN    Document 39    Filed 10/09/25    Page 3 of 13

The parties conducted substantial investigation into the facts and law relevant to the claims and defenses asserted. The documents and other information exchanged were relevant to the claims and defenses asserted and the production of these documents and other information facilitated meaningful and productive settlement discussions. Plaintiffs' counsel has analyzed and evaluated the merits of the claims made against the Defendant in the Lawsuit and the impact of this Settlement Agreement on Plaintiffs.

### B. The Parties Enter into a Fair and Reasonable Settlement Agreement

The parties initiated discussions about a potential settlement of the claims raised in the lawsuit following Defendant's production of time records and pay records for all Plaintiffs between June 7, 2021, through June 7, 2024. During the course of the extensive negotiations, counsel for the parties analyzed and discussed their respective legal claims and defenses. Substantial negotiations culminated in the parties reaching a final agreement. The Settlement Agreement and Release (hereinafter "the Settlement Agreement"), which was submitted as <u>Exhibit A</u> to the Joint Motion to Approve Settlement, sets forth in detail the terms of settlements agreed upon by the respective parties.

The Settlement Agreement provides that Defendant will pay Plaintiffs Sixty-Six Thousand Five-Hundred Dollars and Zero Cents ($66,500.00) for alleged unpaid wages, liquidated damages, and breach of contract damages which Plaintiffs acknowledge will provide them full compensation for all hours worked for Defendant. A breakdown for each Plaintiff is provided as an attachment to the Settlement Agreement. The Settlement Agreement further provides that Defendant will pay Twenty-Two Thousand One Hundred Sixty-Six Dollars and Seventy Cents ($22,166.70) for attorney fees and costs.

If the Settlement Agreement is approved, there will be no remaining wage and hour matters in dispute between Plaintiffs and Defendant; and this case should be dismissed with prejudice as to Plaintiffs' claims. The Plaintiffs and Defendant jointly and respectfully seek this Court's approval of their negotiated settlement agreements and dismissal of this case with prejudice.

## III.     ARGUMENT

Courts have generally held that settlements of FLSA actions such as this one require court approval. *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007) ("[T]here is a judicial prohibition against the unsupervised waiver or settlement of [FLSA] claims."), *superseded on other grounds by regulation*, 73 Fed. Reg. 67987 (Nov. 17, 2008), *as recognized in Whiting v. Johns Hopkins Hosp.*, 416 Fed. App'x. 312 (4th Cir. 2011); *Browne v. The Pantry, Inc.*, No. 1:11-cv-587, 2011 WL 5119263, at *2 (M.D.N.C. Oct. 28, 2011) (noting that FLSA cases "cannot be settled without a court finding that the settlement is fair and reasonable"; citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

Under a private FLSA enforcement action, district courts may approve settlements where, as here, the settlement proposed by the parties constitutes a reasonable compromise of the parties' *bona fide* dispute. *Lynn's Food Stores,* 679 F.2d at 1353. The present settlement was the product of arm's length negotiations by experienced counsel and has the salutary effect of: (1) providing meaningful monetary relief to Plaintiffs, and (2) eliminating inherent risks both Plaintiffs and Defendant would bear if this litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness

should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (recognizing courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness).

### A. A *Bona Fide* Dispute Existed Between the Parties

*Bona fide* disputes existed between the Plaintiffs and Defendant with regard to liability and damages. Plaintiffs allege that they were required to remain on-duty throughout their shifts and continuously subjected to interruptions during their unpaid "meal breaks," which deprived Plaintiffs of overtime for all hours worked in excess of 40 in a single workweek, and deprived Plaintiffs for all wages accruing to its employees on the regular payday, from June 7, 2021 through June 7, 2024. Plaintiffs further argue that they are entitled to liquidated damages because the Defendant did not act in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA. Defendant denies that it violated the FLSA, the NCWHA, or any law or regulation and denies that Plaintiffs are entitled to liquidated damages. Nevertheless, a *bona fide* dispute existed between the parties regarding the extent of Company's liability.

### B. The Settlement Is Fair and Reasonable

The settlements reached are a fair and reasonable compromise of the parties' *bona fide* disputes. Courts consider an FLSA settlement fair and reasonable when the parties are represented by counsel, the attorneys engage in arm's length negotiations in the context of litigation, and the parties reasonably compromise in the settlement. *Lynn Food Stores, Ind.*, 679 F.2d at 1354. As with all other cases, public policy favors the voluntary settlement of FLSA and wage and hour cases. *Id.* (stating "we allow the district court to

6
Case 7:24-cv-00464-BO-RN    Document 39    Filed 10/09/25    Page 6 of 13

approve the settlement in order to promote the policy of encouraging settlement of litigation"); *Matthews v. Cloud 10 Corp.,* No. 3:14-cv-00646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, *6 (W.D.N.C. August 27, 2015) (explaining "there is a strong judicial policy in favor of settlements" in FLSA cases); *In re Dollar Gen. Stores FLSA Litig.*, No. 5:09-MD-15, 2011 U.S. Dist. LEXIS 98162, at *9 (E.D.N.C. Aug. 22, 2011) (internal citations omitted) (stating "[t]here is a presumption in favor of approving a settlement as fair").

The settlement here easily meets this standard. Experienced wage and hour litigators represented the parties in this action and engaged in substantial negotiations. No evidence exists to suggest that the settlements reached in this action involved fraud or collusion between the parties. To the contrary, experienced counsel for the parties negotiated at arms-length extensively.

In assessing the amount paid in settlement, the Court should take into account the risks and costs of litigation. *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982) (citations omitted); *accord Quintanilla v. A&R Demolition Inc.*, No. H-04-1965, 2007 WL 5166849, at *5 (S.D. Tex. May 7, 2007). Endorsement of the settlement by counsel for both parties is a "factor [that] weighs in favor of approval." *Quintanilla*, 2007 WL 5166849, at *5. When reviewing counsel's opinions "a court should bear in mind that counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Id*.

By entering into the settlement, the Plaintiffs and Defendant conserved substantial time and expense that would have been required had the case been further litigated and/or

7

gone to trial. Plaintiffs' FLSA and NCWHA claims against Defendant raise complex legal issues related to both liability *and* damages which would have required significant additional work by both parties to take the case through a judgment. The parties would have undergone substantial time and expense in further discovery. Upon completion of discovery, the parties would have faced the prospect of preparing dispositive motions, a trial on the merits, and potential appeals.

By settling, Plaintiffs will receive full compensation for all hours that they worked for the Company, thereby avoiding the uncertainties associated with further litigation. Given the time and expense that would have been involved in further litigation, and considering the value of the Plaintiffs' individual claims, the settlement is a reasonable outcome for both parties.

Under the terms of the Settlement Agreement, each Plaintiff is receiving 100% of their alleged lost wage damages as calculated by counsel for the parties. This is a reasonable compromise for several reasons. First, one component of the damages model agreed by counsel for the parties was gap time, both for weeks in which overtime hours were worked and for weeks in which no overtime hours were worked. Should this case have gone to trial, Defendant would have a substantial chance of eliminating these hours from consideration. Second, liquidated damages were not assured; Defendant was prepared to bring evidence that they attempted in good faith to follow the requirements of the FLSA and NCWHA.

### C. The Attorneys' Fees and Costs Are Reasonable

The FLSA mandates that a court award reasonable attorneys' fees and costs to a prevailing plaintiff. 29 U.S.C. §216(b). To the extent the Court wishes to determine the reasonableness of the agreed attorneys' fees and costs, Plaintiffs' counsel aver that they are reasonable.

Plaintiffs' counsel's attorney's fees in the amount of $22,166.70, and costs in the amount of $3,330.87, is reasonable. Although an award of attorneys' fees under the FLSA is **mandatory**, district courts generally only examine (at most) whether the fee award in an FLSA settlement agreement is reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions).

In *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994), the court provides the rationale behind the awarding of attorney's fees. The court proceeds: "The purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourages the vindication of congressionally identified policies and rights. Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages."

Plaintiffs' counsel's request for attorney's fees equal to 33.3% of the total settlement is presumptively reasonable. *See, e.g., Devine v. City of Hampton, Virginia*, No. 4:14-cv-81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015) (collecting cases). This is especially

9
Case 7:24-cv-00464-BO-RN    Document 39    Filed 10/09/25    Page 9 of 13

true given the outstanding result obtained by Plaintiffs' counsel. The gross settlement amount provides Plaintiffs with the entirety of their backpay damages at issue in this case. *See* **Exhibit 2** at ¶¶ 21-25. And after attorney's fees and costs are deducted, the Plaintiffs will receive greater than one-half of their alleged unpaid backpay. *Id*. This is an outstanding result, considering Defendant contested both liability and the quantity of damages throughout the case, and the risk that Woodbury could prevail on summary judgment at the conclusion of the case.

To date, Plaintiffs' counsel have billed greater than 50 hours to this matter, taking it from preliminary fact investigation and Complaint drafting to a Court-approved Notice period and communications with members of the collective, through informal discovery, damages calculations, preparation for mediation, attendance at mediation and settlement negotiations. *See* Ex. 2 at ¶¶ 26-34. The requested attorney's fees are less than Plaintiffs' counsel's lodestar at his $650 hourly rate. *See id.*; *see also Ovando v. Mountaire Farms Inc.*, No. 7:23-cv-4-M, 2025 WL 1733070, at *7 (E.D.N.C. May 15, 2025) (preliminarily approving hourly rate of $750 per hour for plaintiff's counsel in wage and hour settlement) (collecting cases).

Plaintiffs' Counsel has extensive experience in litigating FLSA collective action and state wage and hour law class action settlements, having filed and prosecuted over 200 distinct wage lawsuits since 2017. *See* Ex. 2 at ¶¶ 3-6. Finally, the settlement secured by Plaintiffs' counsel affords Plaintiffs a favorable settlement which would have been difficult to surpass at trial. *Id*. at ¶¶ 14-25.

Plaintiffs' counsel has also incurred $3,330.87 in out-of-pocket costs, including the filing fee, in-house handling of sending FLSA notice to hundreds of putative class members, the mediator's fee, and print and copy costs. *See* Ex. 2 at ¶¶ 26-34. Plaintiffs' counsel will submit any further billing information as requested by the Court. For the above reasons, the fees and costs component of the settlement agreement is reasonable.

**D.     The Service Award is Reasonable.**

Courts emphasize that service awards prevent plaintiffs from being penalized for placing the class's interests above their own. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). Such awards are discretionary and intended to compensate class representatives for their work on behalf of the class, as well as the financial or reputational risks they assume. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011) (noting the court's "broad discretion to award payment to class representatives for their efforts to benefit the class").

Courts routinely approve service awards in recognition of these contributions. *See, e.g., Caligiuri v. Symantec Corp.*, 855 F.3d 860, 868 (8th Cir. 2017) (approving $10,000 incentive award); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (same); *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (approving $5,000 incentive awards). Even substantially higher amounts have been upheld. See *Sanders v. MPRI, Inc.*, No. 5:08-cv-00345-R, ECF No. 180 (W.D. Okla. Oct. 19, 2009) (approving up to $14,300); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL

5387559, at *6 (D. Colo. Dec. 22, 2010) (approving $10,000 award); *In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373–74 (S.D. Ohio 1990) (approving $35,000–$50,000 awards); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (approving $25,000 awards), aff'd, 331 Fed. App'x 452 (9th Cir. 2009); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 award).

The proposed $3,000.00 service award to Ms. Desoto is reasonable. Ms. Desoto provided substantial information to Plaintiffs' Counsel at the outset of the case, which was vital to assisting Plaintiffs' Counsel during the initial stage of negotiating the parties' stipulation to conditional certification. The court has previously approved service awards in varying amounts to named plaintiffs based on their work on behalf of the settlement class. *See, e.g., Gorrell v. Wake Cnty.*, No. 5:21-CV-00129-M, 2022 WL 3222003, at *5 (E.D.N.C. Aug. 9, 2022); *Medina v. Westdale Brentmoor, LLC*, No. 5:19-CV-142-D, 2021 WL 1950025, at *6 (E.D.N.C. May 14, 2021); *Speaks v. U.S Tobacco Coop., Inc.*, No. 5:12-CV-729-D, 2018 WL 988083, at *3 (E.D.N.C. Feb. 20, 2018).

## CONCLUSION

The parties entered into fair and reasonable Settlement Agreements that resolve *bona fide* disputes under the FLSA and NCWHA. Accordingly, the parties request that the Court enter an order granting the Joint Motion to Approve Settlement Agreements and dismissing Plaintiffs' claims with prejudice.

Respectfully submitted, this October 9, 2025.

**FITZ LAW PLLC**

By: */s/* Carl A. Fitz
Carl A. Fitz (admitted pro hac vice)
3730 Kirby Drive, Suite 1200
Houston, Texas 77098
Phone: (713) 766-4000
carl@fitz.legal
*Attorneys for Plaintiff*

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

By: */s/ Kevin S. Joyner*
Kevin S. Joyner (NC Bar No. 25604)
Vanessa N. Garrido (NC Bar No. 53470)
Charlotte C. Smith (NC Bar No. 53616)
8529 Six Forks Road, Suite 600
Raleigh, North Carolina 27615
Phone: 919-787-9700
Facsimile: 919-783-9412
Kevin.joyner@ogletree.com
Vanessa.Garrido@ogletree.com
Charlotte.Smith@ogletree.com
*Attorneys for Defendant*